UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **LUCI LEYKUM, M.D.,** | § § § | |
| *Plaintiff*, | § § | |
| V. | § § | Civil Action No. **5:20-cv-00478** |
| **THE UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER AT SAN ANTONIO,** | § § § § | |
| *Defendant.* | § § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT:

COMES NOW, Luci Leykum, M.D., Plaintiff in the above-styled and numbered cause complaining of Defendant University of Texas Health Science Center at San Antonio ("UTHSCSA") and, in support thereof, respectfully represents to the Court as follows:

### PARTIES

1. Plaintiff Luci Leykum, M.D. is an individual who is a resident of Bexar County, Texas.

2. Defendant University of Texas Health Science Center at San Antonio is a state-funded university with its principal place of business located at 7703 Floyd Curl Drive, San Antonio, 78229, Bexar County, Texas.

## JURISDICTION AND VENUE

3. Plaintiff brings this action pursuant to the Equal Pay Act (29 U.S.C. § 206(d)) and Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.). Further, Plaintiff brings this action pursuant to the Texas Equal Pay Act (Tex. Gov't Code § 659.001).

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (Federal Question). This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over the state law claims asserted herein, as they form part of the same case or controversy as the federal questions.

5. Venue in this action is proper within the Western District of Texas pursuant to 28 U.S.C. § 1391(b), in that Defendant is situated within this judicial district, Plaintiff is located within this judicial district, and all of the events giving rise to the claims asserted by Plaintiff occurred in this judicial district.

## FACTUAL ALLEGATIONS

6. Plaintiff Luci Leykum, M.D., M.B.A., M.Sc. ("Dr. Leykum"), is an accomplished physician who had been employed by Defendant University of Texas Health Science Center at San Antonio ("UTHSCSA") since 2004. Dr. Leykum began her employment with UTHSCSA as an Assistant Professor of Medicine. Throughout her fifteen (15) years of employment with UTHSCSA, Dr. Leykum contributed immensely to the successes of UTHSCSA, received numerous grants and awards, and was beloved by her colleagues and students.

7. In 2008, Dr. Leykum earned the position of Division Chief for Hospital Medicine within UTHSCSA. Approximately three months after her appointment as Division Chief for Hospital Medicine, Dr. Leykum was appointed Assistant Dean for Clinical Program Development. In 2009, Dr. Leykum was appointed the Interim Associate Dean for Clinical Affairs and earned

the title of Associate Professor with tenure.  Dr. Leykum was officially appointed as the Associate Dean for Clinical Affairs in 2010, and in 2015, at only 43 years of age, Dr. Leykum earned the position of Professor with Tenure in the Department of Medicine within UTHSCSA.  There was little doubt as to Dr. Leykum's value to UTHSCSA.

8. In 2016, UTHSCSA merged the General Division and the Hospital Division into a single division within the Department of Medicine and named Dr. Leykum as the Division Chief of the newly combined division.  The Division of General and Hospital Medicine became the largest division in the Department of Medicine with approximately 90 members of faculty and staff by 2019, while other divisions' faculty and staff generally ranged from six to twenty members.

9. Aside from the Division of General and Hospital Medicine, there were ten (10) other divisions within the Department of Medicine during Dr. Leykum's employment with UTHSCSA.  Every division chief was assigned responsibilities including faculty recruitment, and retention, defining faculty and staff roles, career development, annual reviews of faculty, obtaining funding for the division, and overseeing the division's budget.  Division Chiefs also directed and supported the clinical, educational, and research efforts in their Divisions.  Due to the size of the Division of General and Hospital Medicine, Dr. Leykum was required to devote more time and effort into her responsibilities than other division chiefs.  Because of Dr. Leykum's dedication to efficiency and exceptional ability to negotiate contracts with hospital partners, for several fiscal years, the Hospital Medicine portion of the Division was the **only** profitable division within the Department of Medicine.  The financial situation of the General Medicine portion improved during Dr. Leykum's leadership.

10. At the time of the merger of the Divisions of General and Hospital Medicine, Dr. Leykum had negotiated a new salary that was effective February 1, 2016. This salary was negotiated based on the needs of the new Division, which included an almost complete rebuilding of the General Medicine component, the time required, and the relevant benchmarks. This salary was transparently arrived at, assumed 50% effort, and clearly delineated in a memorandum at the time of implementation. Yet, Dr. Leykum was put on notice in July 2017 that her salary was to be reduced by approximately $55,000, through no fault of her own. It was explained to Dr. Leykum that this reduction in salary was brought in accordance with "the Department of Medicine Compensation Plan," and that UTHSCSA would be recognizing Dr. Leykum's effort as 33%. This was her total paid effort as a UT faculty member, and included not only her time as Division Chief, but also time spent in various teaching and clinical operational roles. This was surprising to Dr. Leykum, particularly as her supervisor, Dr. William Brian Reeves ("Dr. Reeves") did not seek to discuss or determine her time spent at UTHSCSA with Dr. Leykum. Thus, it appeared that the 33% allocation was completely arbitrary.

11. Dr. Leykum met with Dr. Reeves on September 29, 2017 to inquire as to the calculations that went into her proposed reduction of salary. Dr. Reeves explained that this was a new proposed methodology for salary-setting. This methodology was discussed at a Division Chief meeting at which Dr. Leykum was not present, and materials were not sent after the meeting for Dr. Leykum's review. Following the meeting, Dr. Leykum wrote to Dr. Reeves requesting a meeting with Dr. Reeves and Dr. Bonnie Blankmeyer, in Dr. Blankmeyer's role as Ombudsman for UTHSCSA. However, Dr. Reeves refused to meet under Dr. Leykum's proposed conditions and felt the meeting would be premature.

12. Approximately two months after Dr. Leykum was advised about her potential reduction in salary based on the "new methodology of salary-setting," another Division Chief, Dr. Anand Karnad, received a $22,000 raise. When the salary reduction was implemented, it was not consistent with the new Division Chief compensation plan, did not accurately reflect the faculty in each section of the Division, and did not allow Dr. Leykum to be eligible for annual incentive payments for the Division Chief role, which every other Division Chief received. Finally, as the Division size continued to increase, the time spent as Division Chief nor her compensation were ever revisited by Dr. Reeves.

13. Despite Dr. Leykum's dedicated service, above and beyond the responsibilities listed in her various job descriptions, to the Department of Medicine, her compensation was less than other similarly situated male division chiefs at UTHSCSA, and the time she was allocated for this work was less than other Division Chiefs, despite the size of her Division being 2-3 times larger than other Divisions. Dr. Leykum received an annual salary of $216,000 from UTHSCSA. For the basis of comparison, it was discovered through a Public Information Act request, that UTHSCSA paid a male division chief, Dr. Anand Karnad of the Hematology-Oncology Division within the Department of Medicine, $325,000 annually, despite his division being significantly smaller than Dr. Leykum's. In sum, UTHSCSA paid a male division chief approximately $109,000 more annually than it paid Dr. Leykum for substantially the same work (if not less), requiring the same or lesser skill, effort, and responsibility.

14. Specifically, Dr. Karnad's division had approximately 15-20 faculty members at any given time – a significantly lower number of faculty to be managed than Dr. Leykum's division, which had approximately 90 faculty members prior to her departure in August 2019. The size alone of Dr. Leykum's division required her to put forth a tremendous number of hours to

ensure the division could operate successfully – which it always did. The clinical nature of Dr. Leykum's division, which operated on a "24/7" basis," meant scheduling, staffing, and managing the faculty was far more complex and required additional effort, in contrast to the other divisions within UTHSCSA. Despite putting forth *more* effort, and utilizing a higher degree of skill and responsibility, Dr. Leykum was nonetheless compensated less than Dr. Karnad, the basis for comparison for this dispute.

15. While Dr. Leykum was unaware of the of the pay disparity between her and other male division chiefs at UTHSCSA until she received information from the Public Information Act request[1], she felt as if her workplace had become extremely hostile after the hiring of Dr. Reeves. Indeed, once Dr. Leykum questioned her reduction in pay and appealed to the compensation committee (within the Defendant institution) her concerns about the salary reduction, she was treated in a dismissive and hostile manner, frequently undermined and ignored on matters that directly involved her division and team. Dr. Reeves began undermining her discussions with affiliate hospital leaders, not including her in discussions related to her division or faculty in her division, and telling others he would split the division without speaking with her. The working conditions within UTHSCSA for Dr. Leykum had become so abhorrent that any other reasonable person in Dr. Leykum's position would have felt similarly compelled to resign.

## COUNT ONE
## Violation of the Equal Pay Act

16. Plaintiff incorporates in this Count the facts as set out in ¶¶ 1 through 15.

17. The Equal Pay Act ("EPA") prohibits an employer from discriminating against its employees on the basis of sex by paying wages to employees of one sex "in such establishment at

---

[1] The Public Information Act request was filed for the purpose of identifying information relevant to Dr. Leykum's complaints against Dr. Reeves' treatment of her, for which she has a pending Charge to the EEOC for retaliation and hostile work environment.

a rate less than the rate at which [the employer] pays wages to employees of the opposite sex" for equal work on jobs that require "equal skill, effort, and responsibility, and which are performed under similar working conditions…" 29 U.S.C. § 206(d)(1).

18. Defendant is subject to the EPA as Plaintiff's employer, as defined by 29 U.S.C. § 206(d).

19. Dr. Leykum performed work in a position requiring equal or greater skill, effort, and responsibility under similar working conditions as other male division chiefs within UTHSCSA.

20. Dr. Leykum was paid less by UTHSCSA than an employee of the opposite sex.

## COUNT TWO
## Violation of the Texas Equal Pay Act

21. Plaintiff incorporates in this Count the facts as set out in ¶¶ 1 through 15.

22. The Texas Equal Pay Act provides, "A woman who performs public services for this state is entitled to be paid the same compensation for her service as is paid to a man who performs the same kind, grade, and quantity service, and a distinction in compensation may not be made because of sex." Tex. Gov't Code § 659.001.

23. Dr. Leykum was a public employee of UTHSCSA, performing public services for the State of Texas.

24. Dr. Leykum was paid less compensation for her service than UTHSCSA paid a man who performed the same kind, grade, and quality service as did Dr. Leykum.

25. Dr. Leykum was paid less for her service because of her sex.

## JURY DEMAND

26. Dr. Leykum hereby demands trial by jury on all issues and defenses in this case.

## DAMAGES

27. Dr. Leykum seeks all damages allowed under the law, including monetary relief in the form of back pay, benefits, lost wages, and:

(a) Dr. Leykum seeks an injunction prohibiting Defendants from engaging in unlawful practices;

(b) Dr. Leykum seeks compensatory and liquidated damages for wages not paid in accordance with the Equal Pay Act and the Texas Equal Pay Act.

(c) Dr. Leykum seeks reasonable attorneys' fees and costs, including reasonable expert fees;

(d) Dr. Leykum seeks pre-and post-judgment interest at the maximum rate allowed by law.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully prays that Defendant be cited to appear and, that upon a trial on the merits, that all relief requested be awarded to Plaintiff, and for such other and further relief to which Plaintiff is justly entitled.

Respectfully submitted,

GOODE CASSEB JONES
RIKLIN CHOATE & WATSON, P.C.
2122 North Main Avenue
San Antonio, Texas 78212
Tel: (210) 733-6030
Fax: (210) 733-0330

 /s/ *Kyle C. Watson*
Kyle C. Watson
State Bar No. 20971100
watson@goodelaw.com
Jenna C. Castleman

State Bar No. 24105583
castleman@goodelaw.com
**Attorneys for Plaintiff,
Dr. Luci Leykum**