**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **LUCI LEYKUM, M.D.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | Civil Action No. 5:20-cv-00478-OLG |
| | § | |
| **THE UNIVERSITY OF TEXAS** | § | |
| **HEALTH SCIENCE CENTER AT** | § | |
| **SAN ANTONIO,** | § | |
| | § | |
| **Defendant.** | § | |

---

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO PARTIALLY DISMISS**
**PLAINTIFF'S SECOND AMENDED COMPLAINT [DKT. #71]**

---

"The plaintiff is the master of her complaint." *Cody v. Allstate Fire & Casualty Ins. Co.*, 19 F.4th

712, 715 (5th Cir. 2021) (internal quotes omitted). As such, it is incumbent on the plaintiff to allege

facts sufficient to create the reasonable inference that the defendant is liable for the conduct alleged.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In this case, Plaintiff fails to allege facts sufficient to create

the requisite inference for her Title VII retaliation claim. In her Response, Plaintiff improperly

attempts to shift her pleading burden to Defendant, asking this Court to defer ruling on her retaliation

claim until the "specific context" of her claim can be established (through burdensome discovery).

Dkt. #72 at 2. Respectfully, it is Plaintiff's responsibility to provide that context through her pleadings.

And it is Plaintiff's burden to "nudge[] [her] claims across the line from conceivable to plausible." *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007). Because she fails to do so, Plaintiff's retaliation and

retaliatory constructive discharge claim should be dismissed.

## ARGUMENTS & AUTHORITIES

**A.      Plaintiff's retaliation claim should be dismissed because Plaintiff's Response fails to identify any authority supporting her assertion that the purported retaliatory actions constitute adverse employment actions under Title VII.**

Plaintiff's Response highlights her pleading deficiency: she fails to plead facts necessary to support the inference that each of the alleged retaliatory actions constitute adverse employment actions. *See* Dkt. #71 at 3–4. To support a claim of retaliation, "a plaintiff must show that a *reasonable* employee would have found the challenged action *materially* adverse, which in this context means it might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burling N. & Santa Fe Ry v. White*, 548 U.S. 53, 68 (2006) (emphasis added) (internal quotation marks omitted). This is an objective standard which is judicially administrable and does not rely on a plaintiff's subjective feelings. *Id.* at 68–69. If "context matters," as Plaintiff contends (Dkt. #72 at 2), then Plaintiff was required to plead facts necessary to create that context. Specifically, Plaintiff's Complaint must allow the Court to reasonably infer that, in the context of all well-pleaded facts, Defendant's actions would have dissuaded a reasonable worker from making a charge of discrimination. *See Burlington Northern*, 548 U.S. at 68.

In its Motion to Partially Dismiss Plaintiff's Second Amended Complaint, Defendant contends that 8 of the 9 categories of purportedly retaliatory actions do not constitute actionable adverse employment actions as a matter of law. Dkt. #71 at 3. In response, Plaintiff cites no authority to the contrary and instead contends that the Court should wait to rule on this issue until after summary judgment when she can explain "the specific context" of her claims. Dkt. #72 at 2–3.[1] This is a burden Plaintiff bears at the pleading stage. Plaintiff's Complaint offers no facts from which this Court can

---

[1] While Plaintiff cites authority for the proposition that "decisions affecting compensation are adverse employment actions," Defendant did not contend otherwise in its Motion. *Compare* Dkt. #71 at 3–4, *with* Dkt. #72 at 3.

reasonably infer that any of the items listed in categories 1–8 (*see* Dkt. #71 at 3) constitute adverse employment actions, even in the retaliation context.

For example, Plaintiff alleges that being excluded from work-related conversations implicated her ability to "effectively run her division." Dkt. #69 at 40. But she does not allege facts sufficient to support that conclusory allegation. The omission of the requisite factual support is critical because the Fifth Circuit has already held that being "ostracized by coworkers" (or even "chastised by superiors") is not actionable retaliatory conduct. *Stewart v. Mississippi Transp. Com'n*, 586 F.3d 321, 332 (5th Cir. 2009). Instead of providing factual allegations to distinguish her case from this binding legal precedent, Plaintiff instead suggests that her lack of specificity is itself a basis for denying Defendant's motion. *See* Dkt. #72 at 2. In so doing, Plaintiff attempts to convert a "threadbare recital of the elements" from pleading vice to pleading virtue. *See Iqbal*, 556 U.S. at 662. But the Supreme Court has made clear that "mere conclusory statements do not suffice" and Plaintiff offers nothing more here. *See Iqbal*, 556 U.S. at 662. "The Plaintiff's allegations that she was excluded from conversation . . . do[es] not rise to the level of actions that would have dissuaded a reasonable worker from complaining of discrimination." *Peyton v. City of Yazoo City, Miss.*, 764 F. Supp.2d 831, 840 (S.D. Miss. 2011) (applying Fifth Circuit precedent).

Similarly, Plaintiff contends that Dr. Reeves' "seem[ingly] minor" act of meeting with "Division faculty without informing [Plaintiff]" "undermined [Plaintiff's] ability to do her job." Dkt. #69 at 40. But, here too, Plaintiff fails to plead any facts demonstrating why this "might seem minor, [but] was not." *Id.* Likewise, she alleges that "Dr. Reeves micromanaged the General and Hospital Medicine division by focusing on small issues like faculty effort and time allocations." Dkt. #69 at ¶ 40. Yet, she fails to plead any facts from which the Court could draw the reasonable inference that this particular flavor of "micromanagement" constitutes more than just a minor annoyance against which Title VII does not protect. *See Burlington Northern*, 548 U.S. at 68; *cf. Haley v. Alliance Compressor,*

*LLC*, 391 F.3d 644, 653 (5th Cir. 2004) (noting, in the context of an ill-fated constructive discharge claim, that "having one's work micromanaged may be unpleasant but does not constitute a greater degree of harassment than that required by a hostile environment claim"). Plaintiff's *ipse dixit* is not sufficient to survive a motion to dismiss. *See Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir. 2005) (holding that while a court "must accept the well-pleaded facts . . . as true and construe the allegation in the light most favorable to [the plaintiff]," it does "not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions").

Indeed, contrary to Plaintiff's unsupported contention, it is the courts' duty to "screen out trivial conduct." *Burlington Northern*, 548 U.S. at 69. Title VII does not protect individuals "from all retaliation"—only "retaliation that produces an injury or harm." *Davis v. Fort Bend Cty.*, 765 F.3d 480, 490 (5th Cir. 2014) (quoting *Burlington Northern*, 548 U.S. at 67). Plaintiff's allegations to do not give rise to the reasonable inference that a reasonable person would be deterred by the alleged actions— indeed, Plaintiff concedes that (subjectively) she thrived under Dr. Reeves even after the purported retaliatory actions began. She contends that she excelled so much in her role that Dr. Reeves' description of her job performance as "good" so understated her success that Plaintiff included the praise as an example of criticism. *See* Dkt. #69 at ¶ 40. Because Plaintiff fails to plead facts sufficient to draw the reasonable inference that any of these actions meet the requisite level of materiality to constitute adverse employment actions, her retaliation claim must be dismissed.

**B.     Plaintiff's retaliation claim must be dismissed because Plaintiff's Response fails to identify any factual allegations sufficient to support an inference of a causal connection between the purported adverse employment actions and the protected activity.**

Plaintiff's Response attempts to shift the burden to Defendant to prove that her factual allegations do *not* satisfy the elements of a retaliation claim. *See generally* Dkt. #72 at 4–5. This highlights her failure to plead facts sufficient to draw the reasonable inference that Plaintiff's claim satisfies the

basic elements of a Title VII retaliation claim. *Compare Twombly*, 550 U.S. at 555 (holding that a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level" and mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"), *with* Dkt. #72 at 4–5.

In her Response, Plaintiff asks this Court to infer that when she pled "that she told the chair of [the] compensation committee, the associate dean for clinical, and others that she believed her compensation was being reduced by Dr. Reeves because of her sex," her complaint was subsequently shared with the entire Compensation Committee who then shared the allegation with Dr. Reeves, who then took retaliatory actions against Plaintiff based on an illegal motive. Dkt. #72 at 5. But Plaintiff provides no citations to any part of her Complaint to support such an inference—because none exist. These machinations cannot save Plaintiff's claim from dismissal.

While it is true that the Court "must accept the well-pleaded facts . . . as true and construe the allegation in the light most favorable to [the plaintiff]," the factual allegations giving rise to an inference of a causal connection still must be contained in the pleading. Here, Plaintiff's Second Amended Complaint contains no factual allegations—even taken in the light most favorable to the Plaintiff—to create the reasonable inference of causation. As the Supreme Court put it, Plaintiff's Complaint "must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Twombly*, 550 U.S. at 555 (internal quotation marks omitted). Her retaliation claim should be dismissed.

**C.    Plaintiff's retaliatory constructive discharge claim should be dismissed because she fails to plead a plausible claim.**

To support a constructive discharge claim, plaintiffs must plead "a greater degree of harassment than that required by a hostile work environment claim." *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001). In her Response, Plaintiff relies on Seventh Circuit cases, which are

entirely inapposite, and two Fifth Circuit cases. Plaintiff cites *Welch v. University of Texas and its Marine Science Institute*, but its factual underpinnings bear no likeness to Plaintiff's factual allegations. 659 F.2d 531 (5th Cir. 1981). In *Welch*, the Fifth Circuit upheld a district court's finding that the plaintiff was constructively discharged when her "supervisor told her that as a woman doctor should be unable to work for him and demanded to know . . . when she would leave her employment." *Id.* at 534. Plaintiff has not pled any similar facts here. *Compare id., with* Dkt. #69.

Plaintiff's reliance on *Cortes v. Maxus Exploration Co.*, 977 F.2d 195 (5th Cir. 1992) is even more attenuated. While Plaintiff cites *Cortes* for the proposition that "requiring someone to work under a supervisor the employee had filed a sexual harassment complaint against and [by whom the plaintiff] was worried about continued harassment created unbearable working conditions," Dkt. #72 at 6, the facts of *Cortes* are decidedly more severe than Plaintiff's summary.

In *Cortes*, the Fifth Circuit upheld a jury's finding of sexual harassment and constructive discharge under the following circumstances: the plaintiff's supervisor "repeatedly asked [her] to have sexual relations with him, sometimes threatening to demote or fire her if she refused;" the plaintiff's supervisor "made lewd remarks about her body, told her vulgar jokes on a daily basis, showed her pornographic photographs, asked her to come to his house for 'training' after work hours, bragged about the size of his penis, and frequently brushed up against her legs and breasts." *Cortes*, 977 F.2d at 197–98. After the plaintiff complained, she was demoted. *Id.* at 198. When she complained to Human Resources, the Human Resources manager "told [her] he did not believe her and that she was exposing herself to liability for slander," her pay was docked, and her supervisor "began requiring [her] to ask his permission to leave the office, even to go to the restroom" and "[w]henever she asked to go to the restroom, [the supervisor] would follow her and wait in the hall until she returned." *Id.* And even after the plaintiff was transferred to another department, she was assigned to work under

the supervisor *again*, and he "renewed his sexual advances and offensive jokes," and the sexual harassment persisted for years. *Id*

By contrast, here, Plaintiff alleges that she "felt she had no other choice but to her resign" when her supervisor did not share his thoughts with her, told her he "ha[d] nothing further to say," and "ended a conversation by simply turning around and walking way"—as one is wont to do at the conclusion of a conversation.  Dkt. #69 at ¶¶ 40, 46. These allegations hardly describe the type of environment "permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the [plaintiff's] employment and create an abusive working environment," *Stewart*, 586 F.3d at 328, much less the "greater severity or pervasiveness of harassment than the minimum required to prove a hostile working environment" that is required for a constructive discharge claim. *See Harvill v. Westward Commc'ns, LLC*, 433 F.3d 428, 440 (5th Cir. 2005). Plaintiff's allegations do not come close to this high bar and to conclude otherwise would effectively allow employees to quit their at-will employment whenever work becomes an annoyance and then sue as though they had been terminated.

Moreover, it is axiomatic that the bases Plaintiff cites as reasons a person would feel compelled to resign must be motivated by an illegal reason—otherwise, they cannot constitute contributing factors to a claim of constructive discharge. To support a claim of constructive discharge, a plaintiff must engage in a protected activity which prompts the employer to create "working conditions . . . so difficult or unpleasant that a reasonable person in [Plaintiff's] shoes would have felt compelled to resign." *Harvill*, 433 F.3d at 439–40. To take a simple example: if an employer had a small parking lot and the plaintiff regularly had to walk a mile to get to work, the long walk could not be considered for purposes of a constructive discharge claim unless there was a plausible connection between the plaintiff's protected activity and the lack of parking.

Accordingly, here, the Court cannot consider the alleged salary reduction in considering whether Plaintiff has pled a plausible constructive discharge claim because Plaintiff's alleges she incurred a salary reduction *before* she engaged in any protected activity. Dkt. #69 at ¶¶ 10, 15. Cause must precede effect. One cannot experience a salary reduction, complain about it, and then contend that the reduction was the result of that complaint. But by trying to incorporate her salary reduction into the constructive discharge analysis, that is effectively what Plaintiff is doing.[2] In the absence of an illegal motive, the severity of an employment action does not matter; a plaintiff must demonstrate "a causal nexus" between protected activity and retaliatory constructive discharge. *Harvill*, 433 F.3d at 439. Here, Plaintiff's allegations affirmatively negate any causal nexus between her alleged protected activity and retaliatory constructive discharge. Dkt. #69 at ¶¶ 10, 15. As such, the Court cannot consider the salary reduction when it determines whether a reasonable person would have resigned their employment with UTHSCSA.

## PRAYER

For the reasons stated above, The University of Texas Health Science Center at San Antonio respectfully asks the Court to dismiss Plaintiff's retaliation claims.

---

[2] To combat this conclusion, Plaintiff hypothesizes a scenario in which a racial slur is written on a breakroom wall, an employee complains about it, and management refuses to take it down. Dkt. #72 at 7. Plaintiff argues that, in this scenario—*with imagined facts so divorced from the facts of this case that they serve primarily to highlight the weakness of Plaintiff's claim*—it would be absurd for the Court not to consider the slur as part of the analysis of the employee's working environment. *See id.* But to support a *retaliatory* constructive discharge claim, the imagined employer would need to defer removing the slur from the wall *because* the employee complained about it. As the scenario presented by Plaintiff does not suggest that was the employer's motivation, it would absolutely be correct for this hypothetical Court not to consider the slur in the context of a retaliation claim (although Plaintiff's scenario certainly presents a strong case for a *discriminatory* hostile work environment claim—or potentially even discriminatory constructive discharge).

*Reply in Support of Motion to Partially Dismiss Plaintiff's Second Amended Complaint*                    8

Respectfully submitted,

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**GRANT DORFMAN**
Deputy First Assistant Attorney General

**SHAWN COWLES**
Deputy Attorney General for Civil Litigation

**THOMAS A. ALBRIGHT**
Chief, General Litigation Division

*/s/ Amy S. Hilton*
**AMY S. HILTON**
Assistant Attorney General
General Litigation Division
State Bar No. 24097834
Capitol Station
P.O. Box 12548
Austin, Texas 78711-2548
Telephone: (512) 936-1327
Facsimile: (512) 320-0667
amy.hilton@oag.texas.gov

**Attorneys for Defendant**

**C**ERTIFICATE OF **S**ERVICE

I certify that on February 8, 2022 this document was served on the following counsel of record

through the Court's CM/ECF Document Filing System or through e-mail:

Colin Walsh
Jairo Castellanos
WILEY WALSH, P.C.
1011 San Jacinto Blvd., Suite 401
Austin, Texas 78701
colin@wileywalsh.com
jairo@wileywalsh.com

Kennedy Hatfield Asel
FORD MURRAY
10001 Reunion Place, Suite 640
San Antonio, TX 78216
hatfieldasel@fordmurray.com

**Attorneys for Plaintiff**

*/s/ Amy S. Hilton*
**AMY S. HILTON**
Assistant Attorney General

*Reply in Support of Motion to Partially Dismiss Plaintiff's Second Amended Complaint*        10